UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JIMMY LEE LAZENBERRY,

        Plaintiff,

v.                                  Case No. 3:08-cv-817-J-HTS[1]

MICHAEL ASTRUE,

        Defendant.

## OPINION AND ORDER[2]

### I. Status

Jimmy Lee Lazenberry is appealing the Social Security Administration's denial of his claims for Disability Insurance Benefits and Supplemental Security Income. His alleged inability to work is based on problems with his "[b]ack, shoulder, arm, chest, knees, [and] legs[.]" Transcript of Administrative Proceedings (Tr.) at 134. Mr. Lazenberry was ultimately found not disabled by Administrative Law Judge (ALJ) Robert Droker on November 20, 2007. *Id.* at 11, 22. Claimant has exhausted the

---

    [1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference-Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #16).

    [2] Pursuant to § 205(a)(5) of the E-Government Act of 2002, this order is available electronically. It is not otherwise intended for publication or to serve as precedent.

available administrative remedies and the case is properly before the Court.

On appeal, Plaintiff argues the ALJ improperly "evaluated [his] residual functional capacity [(RFC)] in light of Listing Section 12.05(C)" and failed to carry "his burden at Step Five of the Sequential Evaluation Process." Memorandum in Support of Plaintiff's Position (Doc. #14; Memorandum) at 1, 7, 19.

## II. Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by substantial evidence[.]" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260.  Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]"  *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Discussion

Mr. Lazenberry asserts the ALJ committed error by failing to find he satisfied the criteria of Listing 12.05(C).  Memorandum at 7-18.  Pursuant to that listing:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when [a claimant has a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

The ALJ found the above requirements were "not met because WAIS scores are inconsistent with claimant's activities of daily living, past relevant work, and education.  Furthermore, a

consultative examiner found borderline intellectual functioning, not mild mental retardation." Tr. at 16-17. The judge went on to

> note[] that there are serious inconsistencies between the claimant's testimony and reports to consultative examiners regarding education. During consultative examinations, the claimant reported a high school education plus two years of college; however at the hearing, he testified to only 11 ½ years of . . . school, no GED, and only welding school. Furthermore, there are no school records in the file to support an onset or diagnosis of mental retardation prior to age 22.

The ALJ considered "the variance [in reports of education] to be noticeable and not reflective of good credibility." *Id.* at 17. Finally, he "noted that the claimant passed the written driver's test and reads two hours a day." *Id.*

With regard to what particular daily activities are allegedly inconsistent with Plaintiff's IQ scores, the judge does not elaborate apart from the mention of reading. Elsewhere in the Decision, he writes "[t]he evidence of record shows that the claimant is able to complete all activities of daily living without assistance and complete routine household chores." *Id.* at 16; *cf. id.* at 17 ("The evidence shows that the claimant has mild restrictions of activities of daily living[.]"). In conjunction with his RFC analysis, the ALJ provided a more comprehensive description of daily activities, asserting that "[a]t one point or another in the record" Mr. Lazenberry reported

> doing laundry, cooking, washing dishes, vacuuming twice a week, sweeping once a week, mopping 1-2 times a month, reading two hours a day for his GED, watching television four hours a day, going grocery shopping once a month,

playing basketball and football, completing activities of
daily living without assistance, and working at the
Salvation Army Center in exchange for room and board.

*Id.* at 19. This rendition is generally supported by the record. *See, e.g., id.* at 32 (laundry, cooking, dishwashing), 33 (vacuuming, sweeping, mopping), 34 (reading, television), 35 (grocery shopping, basketball).

According to Plaintiff, "[t]he ALJ's presentation of [his] activities is simply not accurate." Memorandum at 8. To the extent he refers to pain and swelling as limiting factors, though, *see id.* at 8-9, his argument seems largely irrelevant in terms of whether his activities are inconsistent with his assessed IQ. The March 2007 comments he cites from his supervisor at the Salvation Army are more on point. *See id.* at 9; *cf.* Tr. at 198 (progress report alleging low productivity, a "short attention span, and . . . difficulty following directions"). Still, the supervisor suggested a lack of willingness and motivation on Mr. Lazenberry's part, implying he could perform well if he so desired. *See* Tr. at 198 (citing a failure to ask questions when not sure of instructions and stating "[i]t all depends on how bad you want it"); *cf. id.* at 364 (May 2007 progress report from same supervisor finding improvement and stating Plaintiff "has adapted" and is "doing well").

Claimant maintains "the ALJ's reference to [his] having been able to perform at a higher level is overstated[,]" Memorandum at

12, due to an "earnings record [that] suggests [his] yearly earnings have consistently fallen short of the general parameters of SGA."  *Id.* at 10 (citation to record omitted).  Yet, he "acknowledges that . . . the Commissioner's regulations have been drafted so as to indicate that non-substantial earnings do <u>not</u> (in themselves alone) prove that a particular claimant is unable to perform substantial gainful activity."  *Id.* at 11-12 (footnote omitted).  Clearly, Plaintiff's earnings levels do not indicate the ALJ was constrained to deem him disabled due to mental retardation.[4]

Contrary to "the ALJ's assertion that the WAIS-III scores are somehow inconsistent with his education[,]" Plaintiff claims "the ALJ's recognition of his marginal education at Finding #8 is in fact consistent with the assertion of mental retardation (WAIS-III scores) and his claim for disability."  *Id.* at 12 (internal quotation marks and citation to the record omitted).  ALJs are "allowed some leeway to evaluate other evidence . . . when determining the validity of an I.Q. score[.]"  *Henry v. Barnhart*, 156 F. App'x 171, 173 (11th Cir. 2005) (per curiam) (internal quotation marks omitted).  As mentioned by the judge, *see* Tr. at 15, Plaintiff reported to Dr. Jerry Valente he had "completed the twelfth grade and . . . has never been retained nor was he served

---

[4] Over the years, Mr. Lazenberry has performed a variety of jobs, including furniture repair.  *See Tr.* at 163, 167-69.  He even reported supervising two other people as a lead worker.  *Id.* at 167.

by ESE services." *Id.* at 336; *cf. id.* at 28-29 (testimony about taking "home study courses" to complete last half-year of high school education and having associated financial difficulties that have prevented graduation). The doctor also stated Claimant "is a[]ble to complete all of his activities of daily living without assistance." *Id.* at 350. While the record might support more than one interpretation, it has not been demonstrated the ALJ committed legal error by declining to accept the validity of the IQ score at issue.

Mr. Lazenberry also attacks the judge's observation that a diagnosis of borderline intellectual functioning had been given, not mental retardation. Memorandum at 12. Dr. Valente, as noted by the ALJ, *see* Tr. at 21, indeed diagnosed borderline intellectual functioning. *See id.* at 350. This "term is generally defined as describing someone with an IQ from 71-84." *Tompkins v. Moore*, 193 F.3d 1327, 1338 n.9 (11th Cir. 1999). Accordingly, the doctor himself may have perceived Claimant to be functioning at a somewhat higher level than his full scale IQ score would indicate, and so did not consider the score to be entirely valid.

Finally, Plaintiff asserts the judge erred in viewing him as less than fully credible due to his inconsistent statements since, "[i]n a case involving mental retardation, vague, inconsistent and/or questionable statements by a claimant can be expected." Memorandum at 17. No authority is cited for this unpersuasive

proposition.  If an individual is not a reliable source of accurate information, it would seem a judge may reasonably take that fact into account regardless of the cause of the unreliability.

As in *Henry*, "[s]ubstantial evidence supports the ALJ's finding that [Mr. Lazenberry] did not meet the requirements . . . of the Listings for mental retardation.  Although [his] testing scores fall within the range to meet the requirements . . . , substantial evidence supports the ALJ's findings that [he] is functioning at a higher level."  156 F. App'x at 173.  Hence, because the judge appropriately refused to accept the existence of a valid IQ score within the relevant range, whether the rest of the listing has been met is not determinative.[5]  Therefore, a presumption in favor of a stable IQ throughout life is of no help to Claimant.  It is observed, though, "the plaintiff argues . . . that this record documents at the very minimum, at least two adaptive behavioral deficits, 1.) functional academic skills (memory, verbal comprehension) and 2.) work related capacities."  Memorandum at 15.  Concerning at least one of these alleged sets of additional deficits, memory and verbal comprehension, it is unclear how it would qualify as an "other mental impairment" not already accounted for by the IQ score.  Listing 12.05(C).

---

[5] Thus, remand would not be appropriate even if there was a failure to develop the record concerning onset prior to age 22.  *Cf.* Memorandum at 18.  Neither has the need "for a vocational hypothetical incorporating mental retardation[,]" *id.* at 19, been established.

## IV. Conclusion

In accordance with the foregoing, the Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g), and as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's decision.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of June, 2009.

/s/ Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record
and pro se parties, if any